IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOSE ALONSO GARCIA                                                                    PLAINTIFF

v.                                    Civil No. 2:20-CV-02165

OFFCIER MADDOX                                                                        DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed under 42 U.S.C. § 1983. Currently before the Court is a Motion for Summary Judgment by Defendant Maddox. (ECF No. 18). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable P. K. Holmes, III, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

### I.     BACKGROUND

Plaintiff, Jose Alonso Garcia ("Garcia"), filed his Complaint on September 15, 2020, alleging that while he was a pretrial detainee in the Sebastian County Detention Center ("SCDC"), Defendant Maddox used excessive force against him in retaliation for exercising his First Amendment rights. (ECF No. 1 at 3, 4-9). Specifically, Garcia alleges that on October 8, 2018,[1] Defendant Maddox brought a prisoner to house in Plaintiff's cell. (*Id*. at 4). Garcia alleges this was a two-person cell that already housed four inmates. (*Id*. at 4-5). He "advised" Defendant Maddox that the cell was at full capacity and the new inmate would not fit. (*Id*. at 5). He further alleges that when Defendant Maddox saw him, his "whole demeanor change[d]," becoming enraged and angry. (*Id*.). Garcia

---

[1] Defendant Maddox provided evidence showing the event occurred on October 3, 2018, at approximately 1:20 p.m. (ECF No. 19-1 at 109). In his Summary Judgment Response, Plaintiff acknowledges that the incident occurred on October 3, 2018. (ECF No. 29 at 3).

1

claims that Defendant Maddox, without warning, then sprayed him with pepper-spray,[2] screaming "don't tell me how to do my job!" (*Id*.). The pepper-spray hit the back of Garcia's head because he had the opportunity to turn around when Defendant Maddox pointed the pepper-spray at him. He says Defendant Maddox did not give any orders before spraying him, there was no physical contact between him and Maddox, and he made no threatening comments or moves toward Maddox. He further alleges he did not violate any policies and posed no threat to Defendant Maddox. (*Id*. at 5, 7).

Garcia states two inmates were able to exit the cell, but Defendant Maddox kept his focus on him. (ECF No. 1 at 6, 8). He does not allege that Defendant Maddox fired the Taser. He states an unidentified Lieutenant[3] then came and handcuffed him and escorted him to the booking area. (*Id*. at 8). When Garcia told the Lieutenant that he needed to be decontaminated from the pepper-spray, the Lieutenant did not reply. None of the other officers in the booking area replied or responded to his request.[4] (*Id*.). Garcia alleges he was denied decontamination for two and a half hours while he sat in handcuffs. (*Id*.). He also claims that, although the pepper-spray only contacted the back of his head, it was "so strong that after while my eyes shut off" and "I could not see and it was burning my eyes all that time." He states that he started to sneeze and was short of breath, and they still would not help him wash off. (*Id*. at 8-9). He was not taken to see a nurse. (*Id*. at 9).

It is asserted that Defendant Maddox pepper-sprayed Garcia in retaliation for Garcia having previously filing a "complaint and summons against him." (ECF No. 1 at 7). Garcia alleges that Defendant Maddox knew he had filed a complaint against him, which caused him to use excessive

---

[2] Plaintiff refers to the spray as both mace and pepper-spray interchangeably. The Court will use the term pepper-spray for consistency.
[3] This Lieutenant is not named as a defendant in the case.
[4] None of these officers are named as a defendant in this case.

force against him "d[ue] to the fact I had use the court system against him for previous incidents he was part of." (*Id*. at 6). He also asserts that Defendant Maddox's conduct constitutes a due process violation. (*Id*. at 7-9).

Garcia proceeds against Defendant Maddox in his personal capacity for both claims. (*Id*. at 4, 7). He seeks compensatory and punitive damages. (*Id*. at 11).

Garcia filed a Motion for Leave to Amend his Complaint on December 31, 2020. (ECF No. 12). The motion to amend was denied on January 19, 2021, because Garcia failed to follow procedural rules, including attaching a proposed Amended Complaint to his motion. (ECF No. 14). The Court directed the Clerk to send Garcia a blank § 1983 complaint form, and Garcia was directed to use that form to attach as his proposed Amended Complaint with a second motion to amend. (*Id*.). Garcia did not thereafter file a second motion to amend.

Defendant Maddox filed his Motion for Summary Judgment, Statement of Facts, and Memorandum Brief on May 14, 2021. (ECF Nos. 18-20). On May 18, 2021, the Court entered an Order directing Garcia to file his Response by June 22, 2021. (ECF No. 22).

In his summary judgment affidavit, Defendant Maddox indicates that on October 3, 2018, Corporal Davis ordered him to place an inmate in SCDC cell BC09, which is a multi-inmate cell. (ECF No. 19-2 at 1). When he opened the cell door, the inmates inside BC09 began telling him that he could not place another inmate in the cell because it already housed four inmates. (*Id*.). Maddox advised them that Corporal Davis wanted the inmate in this cell. (*Id*.). Garcia objected and placed himself in the doorway of the cell. Defendant Maddox states:

> Mr. Garcia began to yell profanity at me and continued to block the cell door. Mr. Garcia continued to move closer to me in an aggressive manner with clenched fists while yelling profanity. I ordered him to calm down and stop moving toward me aggressively, but he did not comply. I deployed a short burst of OC spray toward Mr. Garcia and called for assistance.
>
> At the time when I deployed OC spray toward Mr. Garcia, I was the only guard in the area and there were five inmates in the area, including Mr. Garcia. Mr. Garcia

3

> was angry and was yelling at me and using profanity, he was advancing toward me aggressively, and he did not comply with my order to calm down and stop moving toward me aggressively. I had attempted to explain the situation to Mr. Garcia calmly, but he continued to yell and advance toward me, escalating the situation. I feared for my personal safety and feared that Mr. Garcia was attempting to start an altercation involving multiple inmates. I used a short burst of OC spray toward Mr. Garcia, to protect my personal safety, to defuse the situation, and to maintain security. Mr. Garcia was not sprayed in the face—he turned before the spray and the spray landed on the back of his head and neck area. Mr. Garcia immediately calmed down, other guards arrived in response to my call for assistance, and we were able to restore order without further incident. (*Id*. at 2).

Defendant Maddox denies that he pointed a Taser at Garcia. (*Id*.) He indicates he had no further involvement with Garcia after he was escorted away from the cell. (*Id*.). He also states that, prior to this incident, he had never received any complaints against him from an inmate or anyone alleging that he used excessive force. (*Id*. at 1). He has never been disciplined for using excessive force, and he was not disciplined for the incident involving Garcia on October 3, 2018. (*Id*.).

An Incident Report has also been submitted. (ECF No. 19-1 at 109). Defendant Maddox's statement in the report reads as follows:

> On 10/03/2018, at approximately 1320, I was placing inmate Parks into BC09 when the inmates in the cell began telling me I couldn't place him in that cell because there was already 4 Inmates inside. I advised them that per Cpl. Davis that I was to place Parks in that cell. Inmate Garcia, Jose then began to walk towards me in an aggressive manner while yelling profanity at me. I then deployed OC spray on him and called for Cpl. Davis to assist me. Additional deputies come in and Parks was placed inside of the cell without further incident. Inmate Garcia was then taken placed in handcuffs and taken to the intae (sic) area to decontaminate, Nothing further to report at this time. (*Id*.).

Corporal Davis provided a supplement to the report:

On the above date and time Dep. Maddox called for me to come down to BC pod. On the way to BC pod their (sic) was an assistance call to BC pod. When myself along with other Deputies arrived inmate Garcia was O.C. Sprayed. Cpl. McBroom placed Garcia in handcuffs end escorted him to intake. I asked Dep. Maddox what had happened and he said that Garcia started to come at him and that is when he peppered sprayed him.

4

Garcia was placed on the intake for a little while to cool off. Garcia was then decontaminated and escorted back to BC pod without further incident. The video is attached to the report. There was no body sheet completed due to nobody laying hands on him other than to apply handcuffs. Nothing further to report at this time. (*Id.*).

Defendant Maddox submitted a video of the incident (ECF No. 19-1, Exhibit A-5), which the Court has carefully reviewed. The video does not contain audio. The video depicts the following:

00:00   An inmate is in the common area of the pod; he walks around, looks out the gate, then continues walking around until he is off-screen.
00:46   Defendant Maddox enters the area through the gate, gestures to the inmate, and walks off-screen.
01:09   The inmate appears on-screen walking up the stairs to the cells and carrying what appears to a mat and bedding.
01:12   Defendant Maddox appears on-screen climbing the stairs behind the inmate. They both turn left at the top of the stairs.
01:19    A cell door opens and an inmate wearing something on his head appears in the doorway. He stands in front of the inmate carrying the bedding and blocks his entry into the cell. He appears to be speaking to Defendant Maddox, but appears to be doing so calmly.
01:30   The inmate in the door stands aside and the inmate with the bedding walks into the cell. He has difficulty getting the bedding in the door; it is not clear if the frame of the door was in the way or if there was another inmate just out of sight inside the door. The inmate then returns to facing Defendant Maddox in the doorway.
01:32   Garcia joins the first inmate standing in the cell doorway, Defendant Maddox raises both of his arms above his head and puts them back down as though calling for a halt. Garcia appears to be speaking emphatically and gestures angrily at Defendant Maddox. He then steps back slightly. The interaction between Defendant Maddox and the two inmates continues.
01:46   Defendant Maddox raises his arms to about chest level and points at the two inmates for about a second. He moves his arms slightly forward and back as he points at them, but no physical contact is made.
01:49   Both inmates are still at the door and interacting with Defendant Maddox. Garcia steps forward again and appears to be speaking emphatically and gesturing angrily. It is not clear if Garcia started to take another step at this point, as he was partially hidden by the door.
01:53   Defendant Maddox sprays Garcia with a short burst of pepper-spray. Garcia turns away as the spray is discharged. The inmate with the headgear exits the cell past Defendant Maddox to the right and puts his hands up.
01:58   Defendant Maddox holsters the spray. He appears to be calling for help. He raises an arm and points at a second inmate as he also leaves the cell. He then points to an inmate still standing in the cell.
02:18   Several other guards enter the common area and run up the stairs to the cells. A different guard handcuffs Garcia and walks him down the stairs. Another inmate then exits the cell and talks to the guards assembled at the front of the cell.

On August 2, 2021, Garcia filed a Notice of Address Change and a Motion for Extension of time to file his response to the summary judgment motion. (ECF Nos. 23, 24). The Motion for Extension was granted, and Garcia was given until September 17, 2021, to file his response.[5] (ECF No. 25). Garcia then filed a Motion to Amend his Complaint on August 23, 2021, which was denied as untimely and lacking good cause. (ECF No. 28). Garcia filed his summary judgment response on September 16, 2021. (ECF Nos. 29, 30, 31). Defendant Maddox filed a reply on September 22, 2021. (ECF No. 33). Garcia filed a sur-reply, an unauthorized pleading, on October 18, 2021, which was stricken from the record on October 19, 2021. (ECF Nos. 35, 36).

## II.     LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty*

---

[5] As grounds for this motion, Garcia stated he had been transferred and "separated from his legal documents since February 9, 2021." (ECF No. 24 at 1). Garcia failed to file his Notice of Address Change until August 2, 2021, in direct violation of the Court's Order directing him to file a notice of address change immediately upon any transfer or release. Garcia's Summary Judgment Response was due on June 22, 2021. Nonetheless, Garcia was granted an extension until September 17, 2021, to provide his summary judgment response.

*Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

Defendant Maddox argues summary judgment in his favor is appropriate because: (1) the short burst of pepper-spray employed against Plaintiff was objectively reasonable as a matter of law given the circumstances and caused only *de minimis* injury to Plaintiff; (2) the lawsuit Plaintiff filed against Defendant Maddox was not served on Maddox until after the incident, thus Maddox could not have retaliated against Plaintiff for it on October 3, 2018; and (3) the Complaint against him is barred by qualified immunity. (ECF No. 20).

In his Response, Garcia characterizes this case as "concerning the retaliation for using the court system and excessive force by Officer Maddox." (ECF No. 29 at 1). In his Response Brief, he argues that Defendant Maddox "knew that I had filed grievances and a complaint against him and he was serve[d] with the summons concerning a complaint of putting Mr. Garcia in harms way by placing him in . . . the green group." (ECF No. 30 at 1). Garcia does not address the Statement of Facts provided by Defendant Maddox. Instead, he makes a conclusory set of statements that material issues of fact remain as to whether he posed a threat to Maddox, whether he offered resistance or disobedience, whether the force was applied in a good faith effort to maintain or restore discipline, and whether his injuries resulted from his own acts of using the court system and grievance procedure to protect himself from Defendant Maddox. (ECF No. 31).

In his Reply, Defendant Maddox points out that Garcia only responded generally to the summary judgment motion, failed to address the video evidence, offers no explanation for the inconsistencies between his allegations and the video, offers no evidence beyond his affidavit, and offers no sworn testimony from witnesses.[6] (ECF No. 33).

Garcia has not filed the required response to Defendant's Statement of Material facts. As a result, those facts are deemed admitted pursuant to Local Rule 56.1(c). In determining whether there are genuine disputes of material fact, however, the Court has also considered the allegations set forth in Garcia's verified complaint. *See Berry v. Doss*, 900 F.3d 1017, 1022 (8th Cir. 2018) (court did not err in relying on allegations in verified complaints as evidence to conclude there were material issues of fact in dispute); *Ward v. Moore*, 414 F.3d 968, 970 (8th Cir. 2005) (providing a verified complaint made under threat of perjury "is the equivalent of an affidavit and can serve as [a plaintiff's] response to [a] defendant's summary judgment motion under Federal Rule of Civil Procedure 56(e)").

### A. Excessive Force

The objective reasonableness standard applies to excessive force claims brought by pretrial detainees. *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). "[T]he defendant's state of mind is not a matter that a plaintiff is required to prove." *Id.* at 394. A pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396.

---

[6] Defendant also addresses Plaintiff's argument (ECF No. 29 at 2) that, due to his prison transfer he was denied adequate time for discovery and "the correct motions." Defendant correctly argues that Plaintiff was granted a generous extension to file his Summary Judgment Response despite filing the request several weeks after his Response was due. (ECF No. 33 at 2). The Court also notes that, in his Motion for Extension, Plaintiff states he was transferred and "away from his documents" starting February 9, 2021. (ECF No. 24 at 1). The Initial Scheduling Order for this case was entered on December 17, 2020. (ECF No. 11). The Order was not returned to the Court as undeliverable. Plaintiff was, therefore, well aware of all discovery and other deadlines in the case and, with the exception of his motion regarding his Summary Judgment Response, failed to file any motions asking for an extension to meet them.

The objective reasonableness of a use of force "turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This determination must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* Additionally, "[a] court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

"[O]bjective circumstances potentially relevant to a determination of excessive force" include:

> the reasonableness or unreasonableness of the force used; the relationship between the need for the use of force and the amount of force used; the extent of plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397 (citing *Graham*, 490 U.S. at 396). An action is objectively unreasonable if it is not reasonably related to legitimate governmental interests, such as maintaining order and security, or is excessive in relation to that objective. *Id.* at 398-99.

It is well-settled that pepper spray or other summary applications of force may be used to control a recalcitrant inmate if the inmate poses a threat to himself or others. *Hickey v. Reeder*, 12 F.3d 754, 757 (8th Cir. 2000). If the inmate poses no such threat, the use of pepper spray may constitute excessive force. *Id.*; *see also Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014) (clearly established that force used against inmates who were lying submissively, face-down would violate the Eighth Amendment); *Thompson v. Zimmerman*, 350 F.3d 734, 735 (8th Cir. 2003) (inmate no longer yelling or kicking the doors—no basis for a reasonable officer to believe force was needed

9

at the time to prevent detainee from endangering himself or others); *Treats v. Morgan*, 308 F.3d 868, 873 (8th Cir. 2002) (an Eighth Amendment claim exists when an officer uses pepper spray without warning on an inmate who may have questioned his actions but who otherwise poses no threat); *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989) (force may be justified to make an inmate comply with a lawful order, but only if the inmate's noncompliance poses a threat to other persons or to prison security).

Garcia's version of the incident is that he was "advising" Defendant Maddox that the cell was full and could not accept another inmate. He alleges Defendant Maddox did not give any orders before pepper-spraying him, there was no physical contact between him and Defendant Maddox, and Plaintiff made no threatening comments or moves toward Defendant Maddox.

Defendant Maddox's version of the incident is that Garcia moved aggressively towards him with clenched fists while yelling profanities. He states he told Garcia to calm down and stop moving towards him, but Garcia failed to comply. He also states that he was the only officer in the area, and he feared for his personal safety because he believed Garcia was attempting to start an altercation involving multiple inmates.

Unfortunately, the video of the incident is of poor visual quality and lacks audio. Additionally, many of Garcia's actions are at least partially hidden behind the cell door, and Defendant's back is to the camera for most of the incident. As such, only portions of each parties' version of events may be confirmed, leaving several material questions of fact for resolution. The video indicates that Garcia was agitated and made several seemingly angry arm gestures to Defendant Maddox. Garcia also stepped toward Defendant Maddox just prior to being sprayed, but it is not clear from the video that the step was "aggressive" or a prelude to an assault. There was no physical contact between the parties prior to the pepper-spray burst. Further, due to the lack of audio, it is not possible to determine what either party said during the incident, although some of Defendant

10

Maddox's arm gestures could be interpreted as an attempt to stop or calm the situation. Of particular concern is whether Defendant Maddox issued a warning to Plaintiff prior to spraying him. Garcia alleges in his verified Complaint that he received no warning prior to the spraying, and neither Defendant Maddox's affidavit nor his incident report state that he warned Garcia he would pepper-spray him if he did not comply with the order to calm down and stop moving toward him. Defendant Maddox was the sole officer visible in the frame until he called for help after the spraying. The video also shows there were a total of five inmates in the cell, and an inmate other than Garcia initially blocked the incoming new inmate at the door. It confirms that Garcia and another inmate were in the cell door, apparently both protesting the addition of another new inmate into the cell, with the second inmate appearing to be calmer in his protest. The other three inmates in the cell cannot be seen until they exit the cell after the pepper-spray had been administered. Defendant Maddox also argues that Garcia's injuries were *de minimis* and, therefore, do not support a finding of a constitutional violation. (ECF No. 20 at 9). The Eighth Circuit recently clarified its position on the relationship between degree of injury and excessive force:

> Officer Marzolf argues that a claim for excessive force requires more than a de minimis injury. Not so. We "held in *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011), that it is possible for the use of excessive force to result only in a de minimis injury. But we explained that the 'degree of injury' is still 'certainly relevant insofar as it tends to show the amount and type of force used.'" *Robinson v. Hawkins*, 937 F.3d 1128, 1136 n.3 (8th Cir. 2019) (cleaned up) (quoting *Chambers*, 641 F.3d at 906). So, in our circuit, the degree of injury is relevant to the excessive-force inquiry, but there is no minimum-injury requirement.

*Pollreis v. Marzolf*, 9 F.4th 737, 2021 WL 3610875, at n.4 (8th Cir. Aug. 16, 2021) (cleaned up). Thus, while Garcia's lack of significant injury is relevant to the analysis and will limit his ability to obtain compensatory damages in the event a violation is found, the lack of significant injury, alone, does not bar his claim.

At the summary judgment stage, the Court may not simply select one version of the facts over the other. As the summary judgment record does not entirely support either version of events,

Defendant Maddox is not entitled to summary judgment on Garcia's individual capacity use of excessive force claim against him.

### B. Retaliation

In his Complaint, Garcia alleges that Defendant Maddox pepper-sprayed him in retaliation for filing a "complaint and summons against him." (*Id*. at 7). In his summary judgment response, Garcia characterizes this case as "concerning the retaliation for using the court system and excessive force by Officer Maddox." (ECF No. 29 at 1). In his Response Brief, Garcia alleges, for the first time in this case, that Defendant Maddox retaliated against him for a jail grievance filed against him as well as the prior lawsuit. He argues Defendant Maddox "knew that I had filed grievances and a complaint against him and he was serve[d] with the summons concerning a complaint of putting Mr. Garcia in harms way by placing him in . . . the green group." (ECF No. 30 at 1). The deadline to amend pleadings in this case was March 17, 2021. (ECF No. 11 at 2). The Court will, therefore, not address any retaliation claim based on a previously undisclosed jail grievance.[7]

This leaves Garcia's original retaliation claim concerning the filing of a lawsuit against Defendant Maddox. Garcia did not provide a case number or other or identifying information or documentation concerning the case in his Complaint. Defendant Maddox indicated that the lawsuit in question is *Garcia v. Harris*, Case No. 2:18-cv-02159. (ECF No. 19 at 4). Defendant states this lawsuit was served on him on October 15, 2018, which was only 12 days after the incident. (*Id*.). The record in that prior case indicates Defendant Maddox was actually served on October 31, 2018 (28 days after the incident).[8] In his affidavit, Defendant Maddox states he did not know

---

[7] Defendant Maddox also argues that there was only one grievance filed by Garcia against him prior to October 3, 2018, and this was in August 2018. (ECF No. 19 at 3). This grievance was resolved without further complaint by Garcia. Defendant Maddox had no recollection about the grievance, did not respond to the grievance, and did not know about the grievance on October 3, 2018. (ECF No. 20 at 9-10).

[8] The docket report for this prior case indicates that Plaintiff filed this case on September 12, 2018. The Order directing Service was entered on October 10, 2018, and the summons was returned executed on November 1, 2018, indicating

about the lawsuit prior to being served. In his verified Complaint, Garcia states that Defendant had been served with a lawsuit and summons, but he does not provide a date of service. In his summary judgment response, Garcia states that Defendant had been served with the summons at the time of the incident, but he provides no evidence to support this claim. (ECF No. 29 at 4). In his supporting brief, Garcia again argues that Defendant Maddox was served with the summons, but he does not provide a date of service. (ECF No. 30 at 1-2). Thus, Garcia's allegations that Defendant Maddox was served with the summons for the prior lawsuit - prior to the pepper-spraying incident - are contradicted by the evidence in the summary judgment record.

To prevail on a § 1983 claim for retaliation in violation of the First Amendment, [a plaintiff] must demonstrate: (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir.2004)).

Here, the record indicates that Plaintiff did engage in a protected activity prior to the incident by filing a § 1983 lawsuit on September 12, 2018. As Defendant Maddox was not served with that lawsuit until well after October 3, 2018, however, the pepper-spraying incident could not have been motivated by Plaintiff's lawsuit. Thus, there are no material facts in dispute and Defendant Maddox is entitled to judgment as a matter of law on Garcia's retaliation claim.

### IV. CONCLUSION

Accordingly, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 18) be **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion should be

---

that Defendant Maddox was served on October 31, 2018. (ECF Nos. 6, 11). Summary judgment on Plaintiff's claims was granted on November 8, 2019. (ECF Nos. 54, 55.)

**GRANTED** as to Plaintiff First Amendment retaliation claim and **DENIED** as to Plaintiff's excessive force claim.

The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 29th day of December 2021.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE